**People of the State of Illinois, Plaintiff-Appellee, v. Ronald Wright, Defendant-Appellant.**

**Gen. No. 50,455.**

First District, Third Division.

February 23, 1967.

█

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer, Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Gerald Eisen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from the convictions of the crimes of armed robbery and of battery. The defendant was found guilty after a trial by jury and sentenced to the Illinois State Penitentiary for concurrent terms of 15 to 35 years and 5 to 10 years.

The defendant contends that the court erred in not permitting his defense counsel to examine grand jury testimony of the complaining witness, after she had testified on direct examination; that the court improperly instructed the jury; that the defendant's record of prior convictions was improperly read to the jury since the defendant admitted to such convictions during the course of his testimony, and that the prosecutor's statement to the jury immediately prior to the reading of the record of defendant's convictions contained an erroneous statement of law and invaded the province of the court.

302

The State's evidence indicated that on the evening of September 18, 1964, while walking in the street, Mrs. Camadeca was assaulted by the defendant, who struck her with a metal object, causing damage to her eye which required several stitches. The defendant took approximately $2 from the woman. The screams of Mrs. Camadeca were heard by several neighbors and pedestrians in the area, none of whom saw the assault. The defendant, a colored man, was seen in the area five minutes after the screams were heard, was chased and caught by the civilian pedestrians. During the chase the defendant was seen to drop several items which could not be identified by the pursuers. A purse and a gun were later found by investigating police officers over the route of the chase. A cosmetic case and a wallet were found in the defendant's coat pocket by the police. These were identified by the complaining witness as belonging to her. The raincoat worn by the defendant was also identified by Mrs. Camadeca as the coat worn by the defendant at the time of the assault.

Mrs. Camadeca testified that she was treated for shock at the hospital; that the police came to the hospital and told her they had the man and she was taken from the hospital immediately by the police and identified the only man in the lineup who was wearing a raincoat.

The defendant, during direct examination, testified that he had been in the penitentiary from 1960 to 1964. When asked what crime he had been sent up for he answered, "Armed Robbery." He was then asked how many charges of armed robbery, to which he answered, "Two, Two or Three." He further testified that he was, at the time of trial, on parole.

The defendant testified that he had fallen asleep on a bus, and that when he awakened he alighted from the bus in a strange neighborhood, and was walking in the street; that he was chased by strangers and caught, and that none of the identified materials were found in

his pocket or were ever in his possession. On cross-examination by the State the defendant admitted that he had been convicted on two or three charges of armed robbery. The State, in rebuttal, introduced into evidence and read to the jury, three certified copies of court records of the defendant's three prior convictions for armed robbery.

The defense first contends that it was error for the court to deny defendant the right to examine grand jury testimony during cross-examination of the complaining witness.

██ In People v. Johnson, 31 Ill2d 602, 203 NE2d 399, the court pointed out that the policy of grand jury secrecy is intended to prevent the accused from escaping before he is indicted and from tampering with witnesses; to protect an accused person who is not indicted against unwarranted exposure; to encourage uninhibited deliberations by the grand jurors, and to encourage witnesses to testify before the grand jury without fear of public disclosure. The court in that case held, on page 606:

> "None of those reasons is applicable in the present case, where the accused seeks only the transcript of the testimony of a witness who has testified at the trial. Plainly the disclosure of grand jury minutes after an indictment is returned and the case proceeds to trial will involve no danger of flight by the accused and no risk of damage to his reputation. Nor is it to be expected that he will tamper with a witness who has already testified against him. There will be no impediment to future grand jury deliberations since such deliberations will remain secret. Finally, it is in no sense unfair to a witness who testifies at the trial to reveal his previous testimony."

The court in the Johnson case, supra, adopted the reasoning in Bressler v. People, 117 Ill 422, 8 NE 62: "When the indictment is returned, and the defendant arrested and placed upon trial, neither the statutory nor common law reasons for secrecy can apply. There can be no reason, then, why evidence given before a grand jury should not be made known and proved, if the ends of justice require it." The court in Johnson, supra, reversed the conviction and remanded the cause, because the prosecutrix's testimony before the grand jury was not turned over to the defense.

■ The State argued that at the time the defendant requested the transcript of the testimony before the grand jury of the complaining witness, at the close of her direct evidence, he did not pursue his request and therefore he waived his right to the production. After the defense attorney had brought out from the complaining witness that she had testified before the grand jury in the case, the defendant's attorney said:

> "Mr. Hartman: Your Honor, I would like to ask for a copy of the officer's report respecting her, any statement she made to the officers. Also, I would like to ask for a copy of the Grand Jury minutes pertaining to her testimony before the Grand Jury.

> "The Court: Both motions denied.

> "Mr. Divito: I would like to state this for the record; the jury minutes are not typed up. However, I am willing to show Mr. Hartman remarks she made to other people down at the Grand Jury, which were typed up. If you want I will show it to you and you can read it. We have it available if you want to look at it."

305

The prosecutor then furnished counsel with a two-page typewritten police report signed by two police officers. Obviously, the prosecutor, after having objected to the request of the defense for the production of the grand jury minutes and other statements and after the court had sustained his objection, realized that both he and the court were in error, as he immediately produced the typewritten police report but said that the testimony of the complaining witness before the grand jury had not been typed. This was inexcusable for the reason that the opinion in Johnson, supra, had been rendered by the Supreme Court more than a month prior to the commencement of the trial in this case. Counsel for defense cannot be said to have waived his right after the court had sustained the State's objection to the production of the grand jury minutes. The defense had moved for the grand jury minutes at the proper time, and the court erroneously denied defendant's motion. Furthermore, in People v. Almanza, 76 Ill App2d 395, 222 NE2d 74, this court held that although People v. Johnson, supra, had been decided after the trial of Almanza, the Supreme Court considered that its ruling was within the scope of the rulings pronounced in People v. Wolff, 19 Ill2d 318, 167 NE2d 197, and People v. Moses, 11 Ill2d 84, 142 NE2d 1, and that the holding in Johnson was but a clarification of existing law.

■ The State had attached to its brief an appendix which purports to be a transcript of the testimony of Nancy Camadeca taken before the grand jury of Cook County. The appendix bears no authentication nor certification by anyone. The grand jury minutes are not a part of the record in this case, nor have they been abstracted. In People v. Dorsey, 66 Ill App2d 441, 214 NE2d 503, this court held that it cannot consider anything that is not a part of the trial record. This rule has been followed in numerous cases and it would serve no useful purpose to list them. Since the appendix to

the State's brief is not a part of the record in this case this court will not consider it.

■ The defendant next urges that the court erred in giving State's Instruction No. 9. The defendant in his reply brief sets forth numerous instructions, both those offered by the State and by the defense, which had been refused. Again we find no certification or authentication of these instructions, and they do not appear in the record or in the abstract. The defendant has failed to bring to this court all of the instructions, both given and refused. In People v. Robinson, 27 Ill2d 289, 189 NE2d 243, the court said on page 292: "We have consistently held where the abstract of record includes only the instruction complained of without regard to the other instructions, both given and refused, that since this court is not bound to search the record itself to supply abstract deficiencies, error cannot be predicated upon the giving, refusal, or modification of that instruction. (People v. Todaro, 14 Ill2d 594; People v. Allen, 17 Ill2d 55.) We will not inquire whether the trial court erred in this respect. People v. Bybee, 9 Ill2d 214, 221, and cases there cited." Since all of the instructions, both given and refused, are not before us we will give no consideration to this point.

The defendant next contends that the reading of the defendant's record of prior convictions with statements by the prosecutor that such might be considered by the jury, denied the defendant his right to a fair trial. On direct examination the defendant testified that he had been in the penitentiary for a period of four years but did not indicate the nature of the offense. The defense cites the case of Bezark v. Kostner Manor, Inc., 29 Ill App 2d 106, 172 NE2d 424, in support of the proposition that only where the defendant fails to state or has denied the prior conviction may independent proof of such conviction be properly introduced into evidence. In that case the defendant contended that the court erred

307

in permitting the State's Attorney to cross-examine him in regard to his conviction of a prior offense and in admitting the transcript of such conviction into evidence. In People v. Neukom, 16 Ill2d 340, 158 NE2d 53, the defendant contended that the court erred in permitting the State's Attorney to cross-examine him in regard to his conviction of a prior offense and in admitting the transcript of such conviction into evidence. The court in the Neukom case, supra, on page 348 said the following: "People v. Baker, 8 Ill2d 522, indicated that cross-examination *only* of a defendant as a witness, to establish a prior conviction, would be erroneous. However, the authenticated copy of the record was admitted in this case, thereby curing any such objection."

In People v. Smith, 63 Ill App2d 369, 211 NE2d 456, the court pointed out that our Supreme Court formerly held that the effect of the defendant disclosing from his own lips the fact of his prior convictions was so damaging that the only manner in which a prior conviction could properly be established was by the record or an authenticated copy of the conviction. The court then went on and explained that our Supreme Court had modified this view and has held that the cross-examination of a defendant as to a prior conviction is not reversible error if the record is also admitted as proof of the conviction. See People v. Squires, 27 Ill2d 518, 521, 190 NE2d 361 (1963); People v. Neukom, 16 Ill2d 340, 348, 158 NE2d 53 (1959).

■ We do not consider the introduction of the record of convictions, after the testimony by the defendant of his prior convictions, constitutes error, reversible or otherwise.

■■ The defendant finally contends that error was committed by the prosecutor when, immediately prior to his reading of the defendant's record of convictions, he stated to the jury, "These exhibits, (Exhibits 4, 5,

and 6, certified records of defendant's convictions) have been admitted into evidence, ladies and gentlemen, and you can consider them as evidence when you go back to the jury room to deliberate." This statement, of course, was improper in that the prosecutor advised the jury that the convictions could be considered as evidence. He did not limit his statement by adding that those records of convictions could only be used as evidence affecting his credibility. The State contends for some reason that the prosecutor's statement was not improper but adds that any confusion was cured by subsequent statements and instructions. The statement as such was certainly improper, not only as to the incorrect law it attempted to impose upon the jury, but because the prosecutor invaded the province of the court which alone may instruct the jury as to the law. During the course of the closing argument the prosecutor did argue that the copies of the convictions were introduced to affect the credibility of the story that the defendant told. The court by a subsequent instruction correctly instructed the jury that the copies of the convictions could only be used as evidence to affect the credibility of the defendant, witness. We cannot, of course, say that it was because of this erroneous statement by the prosecutor that the defendant was convicted, but this error, taken together with the court's error in sustaining an objection to the production of the grand jury minutes of the complaining witness, require us to reverse and remand this case for a new trial.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.