People of the State of Illinois, Plaintiff-Appellee, v. James A. Watson, Defendant-Appellant.

Gen. No. 51,131.

First District, Third Division.

September 28, 1967.

<br>

Gerold W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carl M. Walsh, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction of burglary. After a jury trial defendant was sentenced to a term of five to fifteen years in the penitentiary.

Defendant contends on appeal that he was not proven guilty beyond a reasonable doubt; that the jury should not have been given an instruction on flight, and that defendant was denied a fair trial due to misconduct of the prosecutor and improper admonition by the court. Defendant raised another point based on an allegedly prejudicial remark of the trial judge as shown in the record. An additional certification of the Report of Proceedings was filed which eliminated the prejudicial word which was the basis for this point. This court ordered that the record be sent back to the trial court and that, if it did not accurately disclose what had occurred there, it should be made to conform to the truth in conformity with Supreme Court Rule 329. A certified Report of Proceedings on that order was filed in this court which shows that no prejudicial remark was made and therefore defendant's point is not tenable.

Mrs. Margaret Byrne testified that on June 15, 1965, she lived at 7626 Cregier with her three children. On that date she went to bed about 11 or 11:30 p. m., but

was later awakened by a noise in the house. She called to her older son, William, and said "Someone's in the house." She saw the light of a flashlight shining in the dining room. She was momentarily blinded by the light and then heard someone run out the back of the house, chased by her son.

She also testified that about $7, including a $5 bill, a $1 bill and some change, was missing from her wallet which had been left on the dining room table.

William Byrne testified that he was awakened about 2:30 a. m. by his mother's screams. He saw a shadow in the living room. He chased the person through the house. When he reached the back porch he saw the man in the alley. He was able to see that the figure was a male Negro about 5′ 8″ wearing a tan sport coat and dark pants.

Instead of going after the figure Byrne went back into the house to see if anyone else was there. He then ran out the front door and down the street, parallel to the alley in which he had last seen the burglar. As he neared the corner of 77th Street he again saw the figure (wearing the same coat and pants) heading east.

He returned home and gave a description of the figure to police. Shortly thereafter, as a patrol car approached 75th and Constance (a few blocks from the Byrne home), they observed a male Negro (defendant) in a tan coat and dark pants. They alighted from the car and followed the man into an alley. Officer Laughlin hollered to the man to halt, announced he was a police officer and fired a warning shot. Defendant ran away from the officer into a yard. When the officer reached the gate to the yard defendant changed direction and headed towards the officer with his hand raised and holding a flashlight. He slipped on the grass, dropped the flashlight and was taken into custody.

Defendant was taken to the Byrne home. William Byrne testified that the person in police custody was the same figure he had seen earlier and was wearing the same coat and pants. Defendant was searched in front of the Byrne house and in his clenched fist were found two crumpled bills, a $5 bill and a $1 bill. Some small change was found in his pocket.

Defendant contends that he was not proven guilty beyond a reasonable doubt. In support of this he claims that there was no actual identification of him by any witness and that an improper identification was allowed at trial and was supported by inadmissible hearsay testimony.

■ William Byrne testified that, while he had not seen defendant's face, he had seen his general build and the clothing he wore. These were the bases for his identification of the defendant the night of the burglary shortly after the crime was committed. While this may by itself seem weak, this weakness does not make it valueless and it was some evidence of Watson's guilt. Defendant has cited cases in which convictions were reversed because of vague and doubtful identifications but those identifications were the only evidence connecting those defendants with the crimes of which they were accused. In the case before us there is more, albeit circumstantial, evidence. Watson was found in the neighborhood of the crime soon after it took place, and on his person were found a flashlight and money of the same denomination as Mrs. Byrne said was missing from her wallet. The court in People v. Lofton, 64 Ill App2d 238, 243, 212 NE2d 705, stated:

> "A conviction based on circumstantial evidence may be upheld where the proof of circumstances leads on the whole to a satisfactory conclusion and produces a reasonable and moral certainty that the defendant committed the crime as charged."

456

Looking at the circumstantial evidence and the identification, which is entitled to some weight, we cannot say Watson's guilt was not proven beyond a reasonable doubt.

■ Defendant also claims that it was prejudicial and reversible error for the court to allow Byrne to testify that defendant was the same man as the one he saw in police custody after the crime. While this practice may not be commendable, the jury could certainly distinguish the identifications, and recognize this as merely testimony that this was the man who was arrested the night of the crime. Allowing that testimony was not reversible error.

■ Defendant also argues that the impact of Byrne's identification of Watson (as the man whom he saw running away from the scene of the crime) was increased by the admission of hearsay testimony of a police officer who was there at the scene. He claims that the admission of that evidence constituted grounds for reversal. The officer testified that when Watson was brought to the Byrne home he (the officer) talked with Byrne. While defendant claims that the officer testified to statements made by Byrne about defendant but out of his presence, this is not supported by the record. The officer described the scene, and in particular the relative positions of Byrne and defendant. He was not allowed to relate the remarks of Byrne made at that scene. Hearsay testimony is defined in McCormick, Law of Evidence, 1954, at page 460 as:

> "testimony in court . . . of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of an out-of-court asserter."

The description given by the officer, therefore, was not hearsay. Although defendant claims that this testimony

was also prejudicial, we do not agree. It merely portrayed the circumstances of Byrne's identification of defendant.

Defendant next contends that the jury should not have received an instruction as to flight. Defendant failed to abstract all instructions but put forth only the one complained of, and under this condition the court will not consider the alleged error. People v. Harrell, 34 Ill App2d 205, 180 NE2d 889; People v. Woodruff, 9 Ill2d 429, 137 NE2d 809. See also People v. Bybee, 9 Ill2d 214, 221, 137 NE2d 251.

Defendant next contends that he was denied a fair trial due to misconduct of the prosecutor and improper admonition by the court. From a reading of the record it would appear that defense counsel continually interrupted the proceedings with objections. This is not the function of an attorney. While it may be that he felt these were valid objections and should have been voiced as a matter of trial tactics, it appears that counsel was merely attempting to bait the court and irritate the opposing counsel. Counsel must remember that he is an officer of the court and must behave accordingly.

The particular instances of which defendant complains do not support his contention. Both times counsel was engaging in strenuous objections to testimony during redirect examination of the State's witnesses. In each case the testimony tended to clarify that brought out by defense counsel during cross-examination. Any admonitions were not due to the proper objections of counsel (which were sustained) but rather due to his constant harassment of the prosecutor and of the court. Defendant may not complain of a matter evoked by his own conduct. People v. Weisberg, 396 Ill 412, 71 NE2d 671, and People v. Woodley, 57 Ill App2d 380, 206 NE2d 743, held that an attorney could not claim as error a reply to his own improper argument. Likewise he may not complain here of the court's reply to his improper conduct.

Defendant also contends that he was unduly and improperly hindered in his cross-examination of William Byrne. During that cross-examination counsel was allegedly attempting to impeach Byrne on the basis of a statement made to a police officer the night of the burglary. Byrne had testified on direct examination that he had seen defendant walking east on 77th Street as he (Byrne) was running down Cregier. Defense counsel was attempting to show that Byrne had said on the night of the crime that defendant went down Eastwood. Eastwood is a street on the north side of Chicago, miles from the Byrne home.

The State, in its brief, attached as an appendix an affidavit of an assistant State's Attorney in which he identified two exhibits, People's exhibits numbers two and four for identification. However, these exhibits were never offered into evidence and the State could not have offered them at the time they were mentioned (during cross-examination of Byrne by defense counsel). These items were police reports which are not in the record and therefore not proper subject matter for our review. The record may not be implemented by affidavits or attachments in a brief. People v. Wright, 80 Ill App2d 300, 225 NE2d 460.

From the record it appears that defense counsel, realizing a typewritten copy of what Byrne had said was inaccurate and that the original longhand copy correctly stated that defendant was headed east, insisted on questioning Byrne about the difference. Counsel knew that the witness could not be impeached on this point and could only have been trying to confuse or mislead the jury. The State went beyond its rights in making statements at that time about the two police reports, but any error on the part of the State was evoked by the deceptive tactics of defense counsel. A review of this incident shows no reversible error.

In light of the foregoing discussion, the conviction is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.