2026 IL App (2d) 250435-U
No. 2-25-0435
Order filed May 20, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust, Plaintiff-Appellee,

v.

JOSEPH F. MIDDAUGH, KEILA MIDDAUGH, and UNKNOWN OWNERS and NON-RECORD CLAIMANTS, Defendants-Appellants.

Appeal from the Circuit Court of Lake County.
Honorable Michael B. Betar, Judge, Presiding.
No. 22-FC-409

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's petition for relief from judgment based on an alleged lack of personal jurisdiction due to purported defects in the process server's affidavit of service.

¶ 2    Defendants, Joseph and Keila Middaugh, appeal from the trial court's order denying Keila's petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)). In her petition, Keila asserted that the trial court lacked personal jurisdiction over her because the process server did not properly effectuate service based on purported deficiencies in his affidavit of service. The trial court disagreed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On May 31, 2022, plaintiff U.S. Bank Trust National Association (U.S. Bank), through its predecessor in interest Community Loan Serving, LLC, brought a single count foreclosure action against defendants, who are husband and wife.  Attached to the complaint were a promissory note signed by Joseph on October 29, 2019, bearing the original principal amount of $290,625 and a mortgage signed by both Joseph and Keila, pledging their property at 1 Conesus Court in Hawthorn Woods (the Hawthorn Woods home), which they own as tenants by the entirety, as security for the promissory note.  The complaint alleged that defendants failed to pay the monthly installment on the promissory note beginning on April 1, 2020.

¶ 5    On June 21, 2022, plaintiff's special process server, Norman Minarik, filed an affidavit regarding service of process on Keila.  The affidavit stated that Minarik effectuated substitute service by leaving a copy of the summons and complaint with Joseph at the Hawthorn Woods home on June 10, 2022, at 4:49 p.m.  Minarik described Joseph as a white male with black/gray hair, between the ages of 51 and 55, between 6 feet and 6 feet 3 inches tall, and weighing between 211 and 230 pounds.  Minarik also stated in the affidavit that he advised Joseph of the contents of the documents and mailed a copy to Keila at her usual place of abode on June 14, 2022.  In the "additional comments" section of the affidavit, Minarik stated that he:

> "served the defendant at this address by giving a copy of the summons and complaint to her husband, Joseph.  [Joseph] confirmed that they are married and that they both live here. He has [*sic*] a white male, 55 years old, with black and gray hair.  He is 6' 1" tall and weighs 230 pounds.  This is a two-story single-family residence with an attached two car garage."

A copy of the summons addressed to Keila, which indicated that it was served on June 10, 2022, at 4:49 p.m., was attached to Minarik's affidavit.

¶ 6    On the same day, Minarik filed an affidavit regarding his service of process on Joseph. The affidavit stated that Minarik personally served Joseph at the Hawthorn Woods home on June 10, 2022, at 4:49 p.m. The affidavit contained the same description of Joseph as the affidavit for Keila's service. The affidavit also had attached a copy of the summons addressed to Joseph, which also indicated that it was served on June 10, 2022, at 4:49 p.m.

¶ 7    On April 16, 2024, plaintiff moved for default judgment. On April 24, 2024, plaintiff filed a certificate of service confirming that defendants were served on June 10, 2022. Attached to the certificate of service were Minarik's two affidavits, Minarik's field notes, and a photo of defendants' Hawthorn Woods home. Minarik's field notes were dated June 12, 2022, at 4:25 p.m., contained several checked boxes regarding the description of defendant's home, and stated that he "served Joseph personally." The photo of the home was dated June 10, 2022, at 16:49:12 (*i.e.* 4:49 p.m.), and contained the geographic coordinates 42°14'11.27" N, 88°1'14.08" W.[1] On May 10, 2024, the trial court entered an order of default and a judgment of foreclosure against defendants. Neither Joseph nor Keila filed an appearance or participated in the proceedings prior to the entry of judgment.

¶ 8    On August 13, 2024, Joseph filed a *pro se* appearance and an emergency motion to stay the sale of the property, stating that he had a loan modification pending, that he needed additional time to explore his options and seek advice, and asking the court to delay the foreclosure sale of the Hawthorn Woods home. On August 14, 2024, the trial court granted Joseph's motion and stayed the sale of the property for 56 days.

---

[1]These coordinates lead to Consesus Court in Hawthorn Woods according to Google Maps. See *People v. Clark*, 406 Ill. App. 3d 622, 632-33 (2010) (holding that the court may take judicial notice of Google Maps location data).

¶ 9 On October 8, 2024, the Hawthorn Woods home was sold at auction by the Lake County sheriff to a third-party bidder, Chicago Asset Management, LLC (Chicago Asset Management). On November 22, 2024, Joseph appeared *pro se* at the trial court's hearing regarding the sale to Chicago Asset Management and requested extra time to vacate the property. On November 25, 2022, the trial court entered a written order confirming the sale to Chicago Asset Management, allowing defendants 60 days to vacate the property, and ordering the Lake County sheriff to evict defendants from the property if they failed to vacate. A sheriff's deed was issued to Chicago Asset Management that same day.

¶ 10 On December 30, 2024, Keila, through counsel, filed a petition under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)) seeking to quash service and vacate the November 25, 2024, order approving the sale to Chicago Asset Management. The petition argued that Keila was not properly served because the process server's affidavit was insufficient, so the trial court did not have personal jurisdiction over her. In support, Keila attached her affidavit and an affidavit from Joseph. Keila's affidavit stated that she was not aware of the foreclosure proceedings until December 16, 2024, when she found an old mortgage statement that indicated she and Joseph were behind on payments. She stated that she never received any documents related to the case.

¶ 11 Joseph's affidavit claimed that Minarik's affidavits were inaccurate. Joseph stated that he was served on June 12, 2022, a Sunday, not June 10, 2022, a Friday. He recalled that it was a Sunday because he was woken up by the process server ringing the doorbell in the morning. He also claimed that the process server's description of him was inaccurate, as he was 43 years old at the time of service, not 55 as Minarik claimed. Joseph also stated that he had sandy blonde hair, not black/gray hair as Minarik claimed. He said that the process server handed him a "bundle of documents" but did not explain what they were or that the documents were for Keila. He claimed

that he did not know the foreclosure proceedings involved Keila. Joseph stated that Keila received a letter from the loan servicer on December 16, 2024, indicating that a sum of money was owed. No other evidence was attached to the petition.

¶ 12    On March 27, 2025, the trial court heard arguments and denied Keila's petition. No report of proceedings or bystander report is contained in the record on appeal, but the parties both indicate that no witness testimony was taken. According to the trial court's written order, the court "considered the Costco receipt which purports to show that either Joseph Middaugh or Keila Middaugh or both checked out at Costco two hours after the service of process."

¶ 13    On April 15, 2025, Keila filed a motion to reconsider the trial court's denial of her petition. She argued that Minarik's affidavit was deficient because it did not specifically state that he left a summons for Keila. Additionally, she requested an evidentiary hearing for three alleged factual discrepancies: (1) when Joseph was served; (2) whether Joseph was actually the person served; and (3) whether Joseph was home at the time of the service on June 10, 2022. Keila attached the same affidavits from herself and Joseph in support of her motion. Also attached were photos of receipts from Costco in Mettawa dated June 10, 2022, at 6:44 p.m., and Hunan Palace Restaurant in Libertyville dated June 10, 2022, at 7:21 p.m.

¶ 14    The trial court denied Keila's motion to reconsider on September 25, 2025, following a hearing. Again, no report of proceedings is contained in the record on appeal. The trial court's written order stated, "Defendant Keila Middaugh's Motion to Reconsider the Order of March 27, 2025 is denied, because the Costco receipt shows Defendant at Costco two (2) hours after service of process." Defendants timely filed a notice of appeal the next day.

¶ 16    Defendants argue on appeal that the trial court erred in denying the petition for relief from judgment because Minarik's affidavit did not strictly comply with the Code's requirements for substitute service (735 ILCS 5/2-203(a)(2) (West 2022)) under *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294 (1986).

¶ 17    Section 2-1401 of the Code provides a statutory procedure to vacate or modify final orders and judgments more than 30 days after their entry.  735 ILCS 5/2-1401 (West 2022).  Ordinarily, section 2-1401 petitions must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence.  *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002).  However, a section 2-1401 petition alleging that the order or judgment is void need not contain these allegations.  *Id.* at 103-04 ("the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence").  An order is void if it was entered by a court that lacked jurisdiction over the parties or the subject matter. *Id.* at 103.  "It is generally accepted that, under fundamental principles of due process, a court is without jurisdiction to enter an order or judgment which affects a right or interest of someone not before the court." *Feen v. Ray*, 109 Ill. 2d 339, 344 (1985).  We review *de novo* the dismissal of a section 2-1401 petition alleging that the judgment is void for lack of personal jurisdiction.  *HSBC Bank USA, National Association v. Gonzalez*, 2024 IL App (1st) 240378, ¶ 22.

¶ 18    Service of process may be had by substitute service:

"by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also

send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." 735 ILCS 5/2-203(a)(2) (West 2022). The person effectuating service must show strict compliance with every requirement of the statute. *Thill*, 113 Ill. 2d at 309. Thus, the affidavit of service must affirmatively state:

"(1) that a copy of the summons was left at the usual place of abode of the defendant with some person of the family of the age of 13 years or upwards, (2) that such family member was informed of the contents of the summons, and (3) that the officer or other authorized person making service sent a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode." *Id.* at 310.

¶ 19    Where the rights of third-party purchasers have attached, the judgment cannot be collaterally attacked for an alleged jurisdictional defect unless such a defect affirmatively appears in the record. *Thill*, 113 Ill. 2d at 312-13. "In determining whether a lack of jurisdiction is apparent from the record, we must look to the whole record, which includes the pleadings, the return of process, the verdict of the jury, and the judgment or decree of the [trial] court." *Id.* at 313.

¶ 20    The affidavit of service is *prima facie* evidence of service which cannot be set aside based upon the uncorroborated affidavit of the person served. *Nibco, Inc. v. Johnson*, 98 Ill. 2d 166, 172 (1983). This rule, however, only applies to matters within the process server's personal knowledge, "such as the facts that service was made, that it was made upon a person who gave his name ***, and that service was made at a particular place." *Id.* Those facts may be set aside only by "clear and satisfactory evidence." *Id.* Facts that are presumptively not within the personal knowledge of the process server, such as whether the person served was a member of the defendant's household or the location of the defendant's usual place of abode, may be denied by

affidavit. *Id.* at 173. If the defendant's affidavit is unrebutted, then the assertions attacking the facts not within the process server's personal knowledge are taken as true. *Id.*

¶ 21 However, the failure of the process server's affidavit to establish every requirement of the statute does not automatically quash service. Under Illinois Supreme Court Rule 102(d) (eff. Apr. 24, 2023), the "[f]ailure to return the summons or file proof of service does not invalidate the summons or the service thereof, if had." Thus, if a question of fact is raised regarding whether service of process was proper, an evidentiary hearing is necessary to resolve the issue. *Thill*, 113 Ill. 2d at 312.

¶ 22 Here, Minarik filed two separate affidavits for Joseph and Keila, each indicating that he left a copy of the complaint and summons for each defendant. In the affidavit attesting to substitute service on Keila, Minarik stated that he left a copy of the summons and complaint for Keila with Joseph at the Hawthorn Woods home, that he informed Joseph of the contents of those documents, and that he mailed a copy of the complaint and summons to Keila's usual place of abode. Joseph confirmed to Minarik that he and Keila are married and that Keila lives at the Hawthorn Woods home. Importantly, Joseph admitted in his affidavit that he was served. Additionally, Keila does not contest that her usual place of abode was the Hawthorn Woods home. Accordingly, Minarik's affidavit regarding substitute service on Keila strictly complies with the statutory requirements and was not facially deficient.

¶ 23 In reaching this conclusion, we find unconvincing Keila's argument that we must reverse because the facts of this case are indistinguishable from *Thill*.[2] In *Thill*, the defendants, a husband

---

[2]Plaintiff contends that Keila forfeited her reliance on *Thill* by not making this argument in her petition and raising it for the first time in her motion to reconsider. Though Keila did not specifically rely

- 8 -

and wife, sought to vacate a foreclosure judgment from the circuit court of Lake County based on a lack of personal jurisdiction over the husband. 113 Ill. 2d at 299-300. The process server's affidavit indicated that he served both the husband and wife by leaving a copy of the complaint with the wife. *Id.* at 300. The process server, though, left empty the portion of the affidavit regarding mailing a copy of the complaint to the husband's usual place of abode. *Id.* The trial court denied the defendants' petition under section 2-1401 of the Code, finding that any jurisdictional defect was not apparent in the record because its judgment of foreclosure and sale stated that the court had personal jurisdiction over the parties. *Id.* at 306.

¶ 24 On appeal, our supreme court determined that the lack of jurisdiction was apparent from the record. Specifically, the affidavit of service was facially deficient in three respects:

> "First, the affidavit of service does not show that any summons was served, noting only service of a complaint. Second, the affidavit fails to show that an additional copy of the summons was left with [the wife] for the [husband]. Finally, and most importantly, the affidavit is defective because it does not affirmatively recite that a copy of the summons was subsequently mailed in a sealed envelope with postage fully prepaid to the defendant at the Pebble Creek Drive address. Accordingly, we must hold that these defects appearing on the face of the affidavit of service rendered the return defective." *Id.* at 311.

The supreme court also determined that a trial court's statement of jurisdiction does not cure any defects in service. *Id.* at 310. Therefore, because the deficient affidavit did not automatically quash service under Rule 102(d), the supreme court remanded to the trial court for an evidentiary

---

on *Thill* in her petition to the same extent as she does now, her petition cited to *Thill* and contained substantially similar arguments.

hearing to determine whether the statutory requirements for substitute service were met. *Id.* at 312.

¶ 25 Here, Keila's claimed deficiencies with Minarik's affidavit are entirely different and unsupported by *Thill*. First, Keila contends that Minarik's affidavit is deficient because Minarik did not specifically state that he explained to Joseph that the documents were for Keila. However, the supreme court did not find the *Thill* process server's affidavit deficient because it failed to explicitly state that he explained to the wife that the summons was for the husband. Rather, the deficiency in *Thill* was because the process server filed a single affidavit for both defendants that indicated only one copy of the summons was served. *Id.* *Thill* and the statute require that the process server's affidavit indicate that process was served for each defendant and affirmatively state that he explained the contents of the served documents. *Id.* at 311. As previously explained, Minarik's two affidavits, which each had attached separate summons for Joseph and Keila, did exactly that.

¶ 26 Second, Keila argues that Minarik's affidavit failed to specify where he mailed a copy of the summons, like the affidavit in *Thill*. This argument is plainly rebutted by the record and is also unsupported by *Thill*. Minarik's affidavit twice states the address of the Hawthorn Woods home. His affidavit goes on to state that he mailed her a copy at "her usual place of abode," which Keila admits in her affidavit is the Hawthorn Woods home. Additionally, the copy of the summons attached to Minarik's affidavit contained the address of the Hawthorn Woods home. This is an entirely different circumstance from *Thill* where the process server's affidavit completely left blank the information regarding mailing the summons to the husband, indicating that he did not comply with the statutory requirement. Minarik's affidavit, on the other hand, shows strict compliance with each of the statutory requirements  Thus, Keila's argument is without merit.

¶ 27 Finally, Keila argues that an evidentiary hearing is necessary to resolve the issue of the date of service. Plaintiff contends that Keila forfeited this argument because she did not argue in the trial court that Minarik's field notes supported Joseph's assertion that he was served on June 10, 2022. It is well settled that an appellant who fails to raise an issue before the trial court forfeits the issue and may not raise it for the first time on appeal. See *In re Shauntae P.*, 2012 IL App (1st) 112280, ¶ 93. Allowing a party to change its theory of the case on appeal would weaken the adversarial process and likely prejudice the opposing party. *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994). "The purpose of the forfeiture rule 'is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction.' " *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24 (quoting *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14). We agree that Keila—who did not respond to this argument in her reply brief—forfeited the argument by failing to first raise it in the trial court.

¶ 28 Forfeiture aside, we nevertheless believe that Keila did not supply clear and satisfactory evidence to rebut Minarik's affidavit. In his affidavit, Joseph—who admits that he was served— is insistent that he was served on June 12, 2022, because he recalled being woken up by the process server ringing the doorbell that morning. He points to Minarik's field notes as support in his appellate briefs. However, despite the same date, those field notes do not corroborate Joseph's assertion. The notes state that the time of day was 4:25 p.m., while Joseph asserts he was served in the morning. Additionally, the Costco receipt does not corroborate Joseph's apparent assertion that he was not home on June 12, 2022. First, neither Joseph nor Keila attested in their affidavits that they were at Costco that evening. Second, as the trial court aptly noted, the receipt is dated two hours after the service took place and does not show that Joseph was not at home. Rather,

Minarik's affidavit is corroborated by the photograph of defendants' home that was geographically pinned and time stamped at the same time Minarik attested he served defendants. Thus, neither the field notes nor the Costco receipt provide clear or satisfactory evidence that Joseph may have been served on June 12, 2022, instead of June 10, 2022.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 31    Affirmed.